IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ROBERT WALIGUNDA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. ___1:22-cv-1383___ |
| | ) | |
| | ) | **TRIAL BY JURY** |
| HOWIE MANDEL, | ) | **IS DEMANDED** |
| SOMMER RAY, | ) | |
| TREVOR DOERKSEN, | ) | |
| RAY BROWN | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ePLAY DIGITAL, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# COMPLAINT

Plaintiff, Robert Waligunda, by counsel, pursuant to Rule 3 of the Federal Rules of Civil Procedure (the "Rules"), files the following Complaint for money damages against defendants, Howie Mandel ("Mandel"), Sommer Ray ("Ray"), Trevor Doerksen ("Doerksen"), Ray Brown ("Brown") and ePlay Digital, Inc. ("ePlay"), jointly and severally.

Plaintiff seeks compensatory damages and punitive damages in a sum not less than **$10,600,000.00**, together with prejudgment interest on the principal sum of awarded by the Jury from December 31, 2020 until the date Judgment is entered pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), plus attorney's fees pursuant to the doctrine of law announced in *Bershader v. Prospect Development*

*Company*, and costs incurred – all arising out of the Defendants' fraud in the inducement, constructive fraud, breach of contract and unjust enrichment.

## I.  PARTIES

1.      Robert Waligunda ("Waligunda") is a citizen of Virginia.  He is 77 years old.  He has a Bachelor's Degree in Health, Physical Education and Recreation, and a Master's Degree in Guidance and Psychological Services (GPS) from Springfield College in Massachusetts.  After college, he became a full-time balloonist.  In the early 2000's, he became involved in the ownership and operation of several technology companies.  In 2016, Waligunda started Father Time, Inc. ("Father Time"), a Delaware corporation (with headquarters in northern Virginia).  Waligunda was CEO and President of the company.  Waligunda was a faithful steward of Father Time's business and operations.  Father Time eventually became a publicly-traded company.  Waligunda was the sole shareholder of Father Time.  He owned 10,000,000 shares of common stock.

2.      Mandel is a citizen of Canada.  He lives and works in Los Angeles, California.  Mandel is a famous entertainer.  Among his many credits, he is the host of the long-running game show *Deal or No Deal* and is a judge on the show *America's Got Talent*. [https://www.howiemandel.com/].

3.      Ray is a citizen of California.  She is a 26-year old American fitness model, social media influencer and celebrity, with her own line of clothing, who has amassed over 26 million followers on Instagram, 12.2 million followers on TikTok, over 1.8 million subscribers on YouTube, and over 1.3 million followers on Twitter, [https://www.instagram.com/sommerray/; https://www.tiktok.com/@sommerray; *see also*

https://www.youtube.com/channel/UC4usqlPfjsJs0XgxclDN4Tw;

https://twitter.com/sommerray].

4.      Doerksen is a citizen of Canada.  He is the CEO of ePlay, a Canadian corporation headquartered in Los Angeles, California.  Doerksen and ePlay represented to Waligunda that ePlay was a mobile game creator and publisher specializing in sports, esports and entertainment augmented reality titles, including the Howie Mandel mobile game collaboration – HowiesGames.com.  [https://www.howiesgames.fun/].  Doerksen claimed that ePlay was operated by an award-winning team of sports, gaming and eSports leaders as well as broadcast and digital technology industry experts, software engineers and athletes who had brought dozens of game titles to market for companies including Time Warner Cable, ESPN, Sony Pictures, AXS TV, Intel, AXN, Fiat, CBS, and others.

5.      Brown is a citizen of California.  He is CEO, secretary and treasurer of ePlay.  Brown is a TV and film producer.  He is president of Ankle Socks and Baseball Pants productions and an executive vice president of ncredible.com, a record label and television/film company created by entertainer, Nick Cannon.  Brown's putative star power and connections led credence to the representations he, Doerksen and ePlay made to Waligunda.

6.      At all times relevant to this action, Doerksen and Brown acted as agents of ePlay, within the scope of their employment.  They used letterhead and company email to communicate with Waligunda, and otherwise held himself out to Waligunda and investors as agents of ePlay.  In order to induce Waligunda to surrender his ownership and transfer control of Father Time (see below), Doerksen, Brown and ePlay represented to Waligunda that Mandel and Ray were "talent" who had contributed brand content and

technology to ePlay, who, in turn, would transfer that content/technology and those firm commitments to Father Time. Doerksen, Brown and ePlay acted as agents of Mandel and Ray with express or apparent authority. Doerksen, Brown and ePlay told Waligunda that they spoke for Mandel and Ray and that Mandel and Ray were both committed to Father Time, and that these celebrities backed Doerksen and Brown's representations.

## II.  JURISDICTION AND VENUE

7.      The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity). The parties are citizens of different States. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      The Defendants are subject to the Court's specific personal jurisdiction. The representations that fraudulently induced Waligunda to contract were communicated via telephone and email to Virginia. The Defendants are each subject to long-arm jurisdiction in Virginia and each, individually or through their authorized agents, has sufficient minimum contacts with Virginia such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

9.      Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2).

## IV.  STATEMENT OF MATERIAL FACTS

10.     In 2019, a college buddy, Ed "Butch" Horsely, contacted Waligunda about people he knew that were interested in purchasing Father Time. Doerksen and Brown wanted to amalgamate e-Play's technology into a publicly-traded company, so they could

4

raise capital to fund operations.  Doerksen and Brown represented that ePlay owned and had rights to valuable games, applications and other properties and content that they said they intended to transfer to Father Time in return for a controlling interest in Father Time. Doerksen and Brown claimed that the timing and environment (middle of covid) was perfect because people were looking for things to do at home.  They guaranteed that Father Time stood to make a lot of money as a result of its products, talent and market conditions.  Doerksen told Waligunda that he had several celebrities who had already signed their rights over to ePlay, and he was going to get more, including Hollywood movie star Will Smith.

11.    Doerksen and Brown's representations induced Waligunda to sign a contract with ePlay.  Waligunda relied on Defendants' representations.  Doerksen and Brown represented themselves as highly experienced and credible businessmen.  They already had a company, ePlay, on the Canadian Stock Exchange.  Importantly, Doerksen represented that Mandel and Ray were actually involved.  Doerksen, Brown and ePlay claimed they had the rights to Mandel and Ray's content/technology, and that that content/technology would be transferred to Father Time.  Doerksen and Brown emphasized that Mandel and Ray were known brands and that their involvement with Father Time brought significant value to the company.  Doerksen and Brown advised Waligunda that Mandel and Ray had agreed to lend their name and fame to Father Time in return for shares of Father Time.

12.    On February 11, 2020, Waligunda signed an Agreement of Share Exchange and technology (the "Agreement").  Pursuant to the Agreement, Waligunda personally agreed to surrender and return his 10,000,000 shares of common stock.

13.     The Agreement further provided as follows:

<div style="border:1px solid">

**Class A Preferred Stock**

Robert Waligunda, CEO/President of Father Time, Inc. will direct the Company to issue the following Class A preferred stock which has voting rights of 1000 votes per share and is convertible to 1 share of common stock per one share of class A preferred stock to the listed individuals:

| | |
|---|---|
| Trevor Doerksen | 600,000 |
| Ray Brown | 400,000 |
| | 1,000,000 |

</div>

The Agreement further specified that:

<div style="border:1px solid">

**Class B Preferred Stock**

Waligunda will also direct Father Time, Inc. to issued Class B preferred stock which has voting rights of 1 vote for each convertible share of common stock and which is convertible to 1000 shares of common stock per one share of class B preferred stock to the following listed individuals:

</div>

| | |
|---|---|
| Trevor Doerksen | 10,000 |
| Ray Brown | 10,000 |
| Robert Waligunda | 8,500 |
| Howie Mandel | 5,000 |
| Sommer Ray | 5,000 |
| Ismail Abdul Fattah | 5,000 |
| Don Lawson | 5,000 |
| ePlay digital | 5,000 |
| Madison E Ryan DBA Madison Consulting | 1,000 |
| Edwin Horsley | 500 |
| ` | 55,000 |

In addition to the Class A and Class B shares, the Agreement provided that Father Time would provide 3,000,000 unrestricted shares for the public to be sold to outside investors for operating capital.

14.     As part of the acquisition, Doerksen, Brown and ePlay represented to Waligunda that ePlay would transfer certain technology to Father Time, including (a)

"Howie Goes Viral", a "new mobile game based on an existing game engine ePlay uses for NBA … utilizing location-based technology, augmented reality, holograms, 3D, and social media … The game is TikTok meets Pokemon Go with Howie Mandel as the central character", (b) "Sommer Ray Video Chat" – "ePlay Digital and Sommer Ray have partnered to develop a new mobile video chat app featuring paid video shoutouts, artificial intelligence, and machine learning.  The app would allow users to request and purchase video messages from Sommer Ray", (c) "Sommer Ray e-commerce – website with USD $1 million in revenue", (d) "FanFreak", "an existing app originally created for Mobovivo clients such as ESPN, The Academy Awards, Cineplex, Sony and others", and (e) "Fanatics", "a new reality show that combines sports trivia, celebrity coaches, and obstacle courses".  Doerksen and Brown represented that Father Time and Ray would "partner to drive an increase in sales and revenue from the existing e-commerce site, including incorporation of new digital skins sales of companion apparel, and that Father Time would share in the revenue from Ray's upcoming marketing campaigns.  Doerksen and Brown further represented that any further intellectual property developed in the course of doing business would be the property of Father Time.

15.    Waligunda believed Doerksen, Brown and ePlay and relied on their representations.  On March 11, 2020, Waligunda signed the Agreement, and accepted a certificate for 8,500 shares of Class B stock.  Upon execution of the Agreement, Waligunda resigned as President and CEO of Father Time.  Doerksen and Brown assumed the President and CEO positions.  They moved the principal place of business of the Company to California.  The Agreement effectively gave Defendants full control of

Father Time, including the technology that Doerksen, ePlay and Brown stated would be contributed to the Father Time.

16.     The Agreement acknowledged that Waligunda was owed an accrued salary of $200,000 and accrued out-of-pocket expenses of at least $15,000.  Doerksen and ePlay represented and agreed to pay Waligunda "$100,000 towards the accrued salary on or before December 31, 2020.  If Waligunda was paid the $100,000 of accrued salary and $5,000 of accrued expenses, the Agreement provided that he would "write off the remaining balance of the accrued salary of $100,000+ and accrued expenses of $10,000".

17.     In the summer of 2020, when Waligunda asked for copies of documents to support Father Time's S-1 filed with the Securities Exchange Commission ("SEC"), Doerksen and Brown repeated that the "agreements" with Mandel and Ray, which were in ePlay's possession, were in place.   Doerksen and Brown diverted Waligunda's attention from making any further inquiry as follows:

> ---------- Original Message ----------
> From: Trevor Doerksen <trevord@mac.com>
> To: Bob Waligunda <bobwaligunda@comcast.net>
> Date: May 25, 2020 at 4:01 PM
> Subject: Re: Father Time S1 05 20 20 1010 V.2
>
> Hi, agreements, letters of intent, or otherwise with Howie Mandel, Sommer Ray, and Bell TV cannot be made public. Warner Bros. does not release Tom Cruise's salary, residual, and promotional agreements for a series of reasons, they can't navigate these productively and neither can we. We will have to work around it.
>
> Thank you,
>
> Trevor

18.     In October 2020, Father Time published a private placement memorandum ("PPM"), and proceeded to offer common shares to the public at a price of $1/share.  Doerksen represented to Waligunda that he sold stock and raised money, and that he needed a bank in which to deposit the funds.  In reliance on Doerksen's representations

that Father Time's operations were going well, Waligunda helped with the preparation of Father Time's securities filings and other corporate matters through the end of 2020 and into 2021.

19.    In November 2021, Waligunda learned that Defendants' representations were false.  Although Doerksen and Brown ended up doing a deal with Mandel, Waligunda learned that they put it through ePlay ***not*** Father Time as represented. Waligunda learned that Ray had never agreed to support and promote Father Time, and that there was no partnership to develop a mobile video chat application and no transfer of any "Sommer Ray e-commerce – website with USD $1 million in revenue."  Further, it had taken months for Doerksen and Brown to set up a bank account for Father Time. They also failed to perform routine corporate filings.  They had no intention to pay Waligunda any accrued salary and expenses, and never did.

20.    Defendants gained ownership and control of Father Time by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.  Waligunda did not know of the untruths or omissions and by the exercise of due diligence could not have discovered the untruths which were intentionally concealed by Doerksen, Brown and ePlay.

**COUNT I – <u>FRAUD IN THE INDUCEMENT/ACTUAL FRAUD</u>**

21.    Plaintiff restates paragraphs 1 through 20 of this Complaint, and incorporates them herein by reference.

22.    Defendants fraudulently induced Waligunda to sign the Agreement, surrender his shares and transfer ownership and control of Father Time to ePlay by

misrepresenting pre-existing material facts, including their intention to transfer certain existing technology to Father Time, Ray's partnership with ePlay, and Defendants' intention to pay Waligunda's accrued salary and expenses.

23.     Waligunda reasonably and justifiably relied upon Defendants' representations and omissions by signing the Agreement, by agreeing to accept half of what Waligunda was owed in accrued salary, and by paying for SEC compliance and tax filings and other expenses which Defendants represented would be paid from the private placement.  Defendants had superior knowledge and substantial experience in the market. Their misrepresentations and omissions caused Waligunda to take action he would not have taken if Waligunda had known the truth.  But for Defendants' false representations, Waligunda would not have signed the Agreement and relinquished his 10,000,000 shares of common stock of Father Time.

24.     Defendants' representations were false at the time they were made.  Once Waligunda signed the Agreement, Defendants had total control of Father Time.  They knew that the Mandel and Ray technologies and brands were very valuable.  They intentionally misappropriated the Mandel technology for ePlay's benefit, and to Waligunda's detriment.  They knew that their representations about Ray's commitment was false.  Defendants knew that their intentional omissions and non-disclosures were material to Waligunda's decision to enter into the Agreement.  Defendants concealed their true intentions, which were to use Father Time to raise capital for ePlay and render Father Time bereft of value and good will.

25.     Defendants acted under false and deceitful pretenses to further their own self-interests, with the intent to injure Waligunda and Father Time.

26.     Defendants' statements, actions, omissions and nondisclosure, and concealment constitutes fraud in the inducement of the Agreement and actual fraud.

27.     As a direct and proximate result of the defendants' fraud, Waligunda suffered damage and incurred loss, including, without limitation, loss of his shares of Father Time, emotional injuries because of the deceit, attorney's fees, court costs, and other damages in the sum of $10,000,000.00.

## COUNT II – <u>CONSTRUCTIVE FRAUD</u>

28.     Plaintiff restates paragraphs 1 through 27 of this Complaint, and incorporates them herein by reference.

29.     Defendants innocently and/or negligently made false representations to Waligunda which induced Waligunda to sign and perform the Agreement, give up his stock, and give up ownership and operational control of Father Time.

30.     Waligunda reasonably and detrimentally relied upon Defendants' misrepresentations.

31.     Defendants' false statements, omissions and actions constitute constructive fraud.

32.     As a direct and proximate result of the Defendants' constructive fraud, Waligunda suffered damage and incurred loss, including, without limitation, loss of his shares of Father Time, emotional injuries because of the deceit, attorney's fees, court costs, and other damages in the sum of $10,000,000.00.

## COUNT III – <u>BREACH OF CONTRACT</u>

33.     Plaintiff restates paragraphs 1 through 32 of this Complaint and incorporate them herein by reference.

34.     Waligunda was an intended third-party beneficiary of the Agreement.

35.     Doerksen, Brown and ePlay materially breached and repudiated the contract with Waligunda by failing to capitalize Father Time as agreed, by giving Waligunda Class B stock that they knew was worthless, and by failing or refusing to pay Waligunda's accrued salary and expenses.

36.     As a direct result of Doerksen, Brown and ePlay's breach of contract, Waligunda suffered damage and incurred loss, including, without limitation, loss of his shares of Father Time, loss of income, court costs, and other damages in the sum of $10,250,000.00.

## COUNT IV – <u>UNJUST ENRICHMENT/QUANTUM MERUIT</u>

### (Alternative to Count III)

37.     Plaintiff restates paragraphs 1 through 36 of this Complaint and incorporate them herein by reference.

38.     Waligunda surrendered his shares of Father Time, and agreed to accept his accrued salary, expenses, and Class B shares in return.

39.     Although Father Time and ePlay contracted for a transfer of shares and technology, there was no agreement as to the price to be paid for Waligunda's shares or the Class B shares he was to receive in return.

40.     Walingunda's delivery of his 10,000,000 shares benefited Defendants. They obtained ownership and control of Father Time.  They used Father Time to raise capital.  Their retention of Waligunda's shares and the benefits of the transaction violates fundamental principles of justice, equity, and good conscience.

41.     The reasonable value of Waligunda's shares is $10,000,000.00.

42.     As a direct result of Defendants' unjust enrichment, Waligunda seeks damages against Doerksen, ePlay and Brown in the amount of $10,000,000.00.

Waligunda alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.   He believes that substantial additional evidentiary support, which is in the exclusive possession of Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Waligunda reserves the right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons and those shown by the evidence, Waligunda requests the Court to enter Judgment against the Defendants, jointly and severally, as follows:

1.     Compensatory damages in the sum of $10,250,000.00;

2.     Punitive damages in the sum of $350,000.00;

3.     Prejudgment interest;

4.     Post-judgment interest;

5.     Reasonable attorney's fees;

6.     Costs.

DATED:      December 6, 2022

ROBERT WALIGUNDA


By:___*/s/ Steven S. Biss*_____
       Steven S. Biss (VSB # 32972)
       300 West Main Street, Suite 102
       Charlottesville, Virginia 22903
       Telephone:   (804) 501-8272
       Facsimile:   (202) 318-4098
       Email:     **stevenbiss@earthlink.net**

       *Counsel for the Plaintiff*